UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOSE L. ORDONEZ, ) | No. CV 13-8018-PLA |
| Plaintiff, ) | |
| v. ) | **MEMORANDUM OPINION AND ORDER** |
| CAROLYN W. COLVIN, ) ACTING COMMISSIONER OF SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on October 30, 2013, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed Consents to proceed before the undersigned Magistrate Judge on December 6, 2013, and December 9, 2013. Pursuant to the Court's Order, the parties filed a Joint Stipulation on July 17, 2014, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on October 9, 1959. [Administrative Record ("AR") at 132.] He received a sixth grade education in Guatemala [AR at 37, 158] and has past relevant work experience as a plastic roll cutter, mattress and boxspring supervisor, industrial cleaner, and the hybrid occupation of mattress finisher and mattress maker. [AR at 27.]

On November 19, 2010, plaintiff filed his application for Disability Insurance Benefits ("DIB"), alleging he has been unable to work since February 1, 2010, due to back injury. [AR at 132, 158.]  After his application was denied initially, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 66-70, 71-72.] A hearing was held on October 13, 2011, at which time plaintiff appeared with counsel and testified on his own behalf, with the assistance of a Spanish language interpreter. [AR at 33-61.] A Vocational Expert ("VE") also testified. [AR at 53-60.] On November 18, 2011, the ALJ issued a decision concluding that plaintiff was not under a disability from February 1, 2010, through the date of the decision. [AR at 22-28.] When the Appeals Council denied plaintiff's request for review on September 13, 2013 [AR at 1-3], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam).  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's

2

decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient

"residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since his alleged disability onset date, February 1, 2010. [AR at 24.][1] At step two, the ALJ concluded that plaintiff has the severe impairment of "degenerative disc disease of the lumbar spine." [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or equals any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to perform "the full range of light work" as defined in 20 C.F.R. § 404.1567(b),[3] opining that "[plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour day; and sit six hours in an eight-hour day. He can never climb ladders, ropes or

---

[1]    The ALJ concluded that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014. [AR at 24.]

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[3]    20 C.F.R. § 404.1567(b) defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." [AR at 25.] At step four, the ALJ determined plaintiff is able to do his past relevant work either as a mattress and boxspring supervisor or a plastic roll cutter, as those jobs are generally performed. [AR at 27-28.] Thus, the ALJ concluded that plaintiff was not disabled at any time from February 1, 2010, to November 18, 2011, the date of the decision. [AR at 22, 28.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends the ALJ committed reversible error by failing to properly resolve inconsistencies between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). [Joint Stipulation ("JS") at 4.] As set forth below, the Court agrees with plaintiff and remands the matter for further proceedings.

**THE ALJ'S RELIANCE ON THE VE'S TESTIMONY**

Plaintiff contends the ALJ erred in his step four determination by relying on the VE's testimony in concluding that plaintiff can perform his past relevant work, as generally performed. Specifically, plaintiff contends that the two jobs identified by the VE require literacy levels that are inconsistent with plaintiff's English language illiteracy, and that neither the VE nor the ALJ made an attempt to explain how plaintiff could perform the jobs identified given his illiteracy. [JS at 8-9.]

At step four of the sequential evaluation process, plaintiff has the burden to show that he can no longer perform his past relevant work as "actually" or "generally" performed. See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001); Villa v. Heckler, 797 F.2d 794, 798 (9th Cir. 1986) ("[Plaintiff] has the burden of proving an inability to return to his former type of work and not just to his former job.") (emphasis and citation omitted). Although plaintiff has the burden of proof at step four, "the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto, 249 F.3d at 844 (citations omitted). To do so, the ALJ must identify "the 'physical and mental

demands' of [plaintiff's] past relevant work" and explain how such demands are consistent with plaintiff's present residual functional capacity. Id. at 844-45 (citing 20 C.F.R. § 404.1520(e)).

Plaintiff's educational level is also a consideration under the regulations and means, among other things, "formal schooling or other training which contributes to [plaintiff's] ability to meet vocational requirements," and "how well [plaintiff is] able to communicate in English since this ability is often acquired or improved by education." 20 C.F.R. § 404.1564(a), (b). In evaluating plaintiff's educational level, the regulations use categories that include "[i]lliteracy" and "[i]nability to communicate in English." See id. at (b)(1), (b)(5). Plaintiff is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling." Id. at (b)(1). With regard to plaintiff's ability to communicate in English, the regulations provide, in relevant part:

> Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

Id. at (b)(5).

At the hearing on October 13, 2011, plaintiff testified through a Spanish language interpreter. [AR at 33, 36, 130.] Plaintiff indicated he has only a sixth grade education obtained in Guatemala. [AR at 37, 158.] He stated he is unable to read or write in English.[4] [AR at 37.] After plaintiff's testimony, the ALJ posed the following hypothetical to the VE:[5]

> I want you to assume a hypothetical individual of [plaintiff's] age, education and background, including [plaintiff's] lack of abilities with English, with the following limitations, that such an individual can occasionally lift 20 pounds, can frequently lift 10 pounds; can stand or walk for six hours in an eight-hour day; can sit for six hours in an eight-hour day.

---

[4] Plaintiff also indicated his inability to read or write English in administrative documents. [See, e.g., AR at 157.]

[5] The Court notes the ALJ failed to mention plaintiff's asserted English language illiteracy anywhere in the decision.

6

>Such an individual is to never climb ropes, ladders or scaffolds. Other postural activities are limited to occasional. Can such an individual perform [plaintiff's] past work?

[AR at 57-58.] The VE responded that plaintiff could perform two of his past jobs, as generally performed, and identified two jobs from the Dictionary of Occupational Titles ("DOT"): supervisor, mattress and boxsprings (DOT 780.137-010) and cutter, plastic rolls (DOT 690.665-010). [AR at 56.]

All jobs listed in the DOT have general education development ("GED") levels -- defined as "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991). The GED level of a job pertains to, among other things, the language, writing and speaking development level necessary to perform a job, ranging from 1 (the lowest level) to 5 (the highest level). Id. The occupation of "supervisor, mattress and boxsprings," which the VE testified a hypothetical plaintiff could perform as it is commonly performed, has the following GED requirements:

>LANGUAGE: Level 2 - READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
>WRITING: Write compound and complex sentences, using cursive style, proper end puncuation [sic], and employing adjectives and adverbs.
>
>SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct puncuation [sic], variations in word order, using present, perfect, and future tenses.

Dictionary of Occupational Titles 780.137-010, 1991 WL 680762 (4th ed. 1991). The occupation of "cutter, plastic rolls," which the VE further testified a hypothetical plaintiff could perform as it is generally performed, has the following GED requirements:

>LANGUAGE: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
>
>WRITING: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.

      SPEAKING: Speak simple sentences, using normal word order, and present and past tenses.

Dictionary of Occupational Titles 690.665-010, 1991 WL 678476 (4th ed. 1991).

      "[T]he best source for how a job is generally performed is usually the [DOT]," and for an ALJ to properly conclude that a job is generally performed in a manner "that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" Pinto, 249 F.3d at 845-46 (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). The DOT raises a presumption as to job classification requirements. See Johnson, 60 F.3d at 1435. An ALJ may rely on VE testimony that varies from the DOT description of how a job is performed "only insofar as the record contains persuasive evidence to support the deviation." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (citing Johnson, 60 F.3d at 1435). Moreover, "when a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Social Security Ruling[6] ("SSR") 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). SSR 00-4p further provides that "[i]f the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id.

      Here, plaintiff testified in Spanish through an interpreter [AR at 36] and completed administrative documents through the use of a translator [see, e.g., AR at 178, 191]. Moreover, the ALJ noted plaintiff's "lack of abilities with English" in the hypothetical he posed to the VE. [AR at 57.] Given these facts, it appears the two jobs identified by the VE are incompatible with plaintiff's English abilities. Neither the ALJ nor the VE clarified how plaintiff could perform two of his past relevant jobs as generally performed, given that the DOT descriptions require language comprehension skills greater than those plaintiff appears to possess. The VE's testimony, which the ALJ adopted, thus could not serve as substantial evidence supporting the ALJ's determination because

---

    [6] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the [Social Security Administration]. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (internal citations omitted).

the VE did not explain the DOT deviation. Furthermore, the ALJ failed to even address plaintiff's English abilities in his decision, much less provide a definitive explanation for accepting the VE's deviation from the DOT. [See AR at 22-28.] The Court cannot find such error harmless as defendant points to no persuasive evidence in the record that could support the ALJ's determination at step four that plaintiff could perform his past relevant work as generally performed given his limited abilities with English. As such, substantial evidence does not support the ALJ's step four determination,[7] and remand is required.

Defendant contends the DOT does not specify that language comprehension must be in English. [See JS at 14-15.] However, defendant cites only on a portion of the GED requirements in the DOT appendix as support, while omitting another portion that indicates: "[t]he description of the various levels of language and mathematical development are based on the curricula taught in schools throughout the United States." See Dictionary of Occupational Titles, Appendix C - Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991); see also 20 C.F.R § 404.1564(b)(5) ("[W]e consider a person's ability to communicate in English when we evaluate what work, if any, he . . . can do. It generally doesn't matter what other language a person may be fluent in.").

Additionally, defendant cites case law for the principle that illiteracy does not result in per se disability [JS at 14] (citing Meza v. Astrue, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011)). However, this principle alone is unpersuasive. The Ninth Circuit, while recognizing that there is not a per se disability arising from illiteracy, instructs that the ALJ must definitively explain a deviation from DOT requirements. See Pinto, 249 F.3d at 847 (noting that although illiteracy is not a per se disability, the ALJ must explain the deviation between the DOT requirements and the VE's testimony; remanding for further proceedings, in part to determine how plaintiff's language skills factor into the disability determination). It is insufficient for the VE to simply state that his testimony is "in conformance" with the DOT when the record contains no persuasive evidence to support this assertion. [See AR at 58.]

---

[7] The Ninth Circuit has stated that "[i]t is unclear whether the ALJ should . . . consider [plaintiff's] language skills at all at step four, given that [plaintiff's] difficulties with language are independent of the disability upon which []he bases [his] claim." Pinto, 249 F.3d at 846 n.5 (opining that whether consideration of language ability at step four indicates a conflation of step four and five analyses is an issue that should be addressed upon remand).

Finally, defendant contends it was plaintiff's obligation to solicit an explanation from the VE regarding DOT deviations. [JS at 16.] However, as discussed supra, the ALJ has an affirmative duty to resolve any apparent conflicts and obtain a reasonable explanation. See Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p).

## VI.
## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate in order for the ALJ to explicitly consider plaintiff's English literacy when determining plaintiff's ability to perform past relevant or other work. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: September 15, 2014

　　　　　　　　　　　　　　　　　　　　/s/ Paul L. Abrams
　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE